# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9106 | **DATE** | May 20, 2003 |
| **CASE TITLE** | Porter v. Fairbanks Capital Corp and CF Mortg Serv | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss the complaint [61-1] is granted in part and denied in part. Counts II, IV, V, VIII, X, and XI of the Third Amended Complaint are dismissed with prejudice. The motion is denied as to Counts III, VI, VII, and IX. plaintiff's motion to strike defendant's reply brief or for leave to respond to new matter [77-1] is denied. Defendant's motion to strike Exhibits D and F from the Third Amended Complaint [62-1] is granted in part and denied in part. Exhibit D is stricken from the Third Amended Complaint. The motion is denied as moot as to Exhibit F. The claims that remain are Counts I, III, VI, VII, and IX of the Third Amended Complaint. This case is set for a status hearing on May 28, 2003, at 10:30 a.m., to discuss plaintiff's renewed motion for class certification, which is pending but has not been briefed. ENTER MEMORANDUM OPINION.

(11) X  [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | MAY 21 2003 number of notices | |
| X | Notices MAILED by judge's staff. | FILED FOR DOCKETING | | |
| | Notified counsel by telephone. | 03 MAY 20 PM 4: 11 | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | CLERK U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to _____ | | | |

date mailed notice

01-9106.031-JCD                                                May 20, 2003

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MARGARET M. PORTER,              )
                                 )
        Plaintiff,                )
                                 )
        v.                        )    No. 01 C 9106
                                 )
FAIRBANKS CAPITAL CORP.,         )
                                 )
        Defendant.                )

## MEMORANDUM OPINION

Before the court are several motions: (1) defendant's motion to dismiss Counts II-XI of the third amended complaint; (2) plaintiff's second motion to cite additional authority in opposition to defendant's motion to dismiss; (3) plaintiff's motion to strike defendant's reply brief or for leave to respond to new matter; and (4) defendant's motion to strike Exhibits D and F from the third amended complaint.

For the reasons explained below, defendant's motion to dismiss Counts II-XI of the third amended complaint is granted in part and denied in part. Plaintiff's second motion to cite additional authority in opposition to defendant's motion to dismiss is granted. Plaintiff's motion to strike defendant's reply brief or for leave to respond to new matter is denied. Defendant's motion to strike Exhibits D and F from the third amended complaint is granted in part and denied in part.

DOCKETED
MAY 2 1 2003

## BACKGROUND

The facts of this case were described in our earlier opinion, and are as follows. Plaintiff, Margaret M. Porter, brings this action against defendant Fairbanks Capital Corp. ("Fairbanks"), alleging that Fairbanks engaged in unlawful debt collection and fraudulent mortgage servicing practices.[1]

The third amended complaint alleges the following facts, which we take as true for purposes of this motion. In 1997, plaintiff obtained a mortgage loan to finance improvements on her home in Chicago. On April 1, 2001, plaintiff's loan was being serviced by CitiFinancial Mortgage Company ("CitiFinancial"). The servicing rights on plaintiff's loan were subsequently transferred to Fairbanks. Plaintiff's loan was in default at the time of the transfer of servicing; prior to the transfer, CitiFinancial had issued a notice of default to plaintiff.

On June 26, 2001, Fairbanks sent plaintiff a demand letter, which plaintiff alleges violates the Fair Debt Collection Practices Act ("FDCPA") because it did not contain certain required information. Plaintiff alleges that five days later, Fairbanks sent plaintiff a letter stating that her account had been forwarded to counsel for the institution of foreclosure proceedings. (However, the date of letter, which is attached as Exhibit E to the

---

[1] Plaintiff's prior complaints were brought against CF Mortgage Service Company as well, but the third amended complaint is brought only against Fairbanks.

third amended complaint, is July 31, 2001). Around the same time, Fairbanks sent plaintiff a videotape entitled "Solutions for Today's Homeowners," which plaintiff claims violates the FDCPA.

Thereafter, Fairbanks accelerated plaintiff's loan and, in the name of its principal, filed a foreclosure action against plaintiff. After accelerating the loan, Fairbanks assessed late charges against plaintiff and continued sending monthly loan statements. After plaintiff filed the instant action in November 2001, the foreclosure proceeding was voluntarily dismissed with leave to reinstate once this case has been resolved. Plaintiff then attempted to reinstate her loan by wire transferring to Fairbanks an amount equal to all monthly payments from the last one that had been accepted by Fairbanks to that of the current month. But in order to reinstate the loan, Fairbanks also demanded attorney's fees for the foreclosure proceeding, post-acceleration late charges, and property preservation fees and broker price opinion fees for services performed by an entity called "RR Review."

The third amended complaint alleges violations of the FDCPA (Counts I, II, III, IV, VI, IX, and XI) and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and its Pennsylvania counterpart (Count VIII). The complaint also seeks restitution (Count X) and declarations that the terms of plaintiff's note and mortgage prohibit Fairbanks from charging

post-acceleration late charges (Count V) and from charging property preservation and broker price opinion fees (Count VII).

Fairbanks now moves to dismiss Counts II-XI of the third amended complaint and also moves to strike Exhibits D and F from the complaint. Also pending before us are plaintiff's second motion to cite additional authority in opposition to defendant's motion to dismiss[2] and plaintiff's motion to strike defendant's reply brief or for leave to respond to new matter.

## DISCUSSION

### *Defendant's Motion to Dismiss Counts II-XI*

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999); Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir.

---

[2] We previously granted plaintiff's first and third motions to cite additional authority in opposition to defendant's motion.

1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)); <u>Jones v. General Elec. Co.</u>, 87 F.3d 209, 211 (7th Cir.), <u>cert. denied</u>, 519 U.S. 1008 (1996).

## A. **Count II (Videotape)**

Count II is a claim that the "Solutions for Today's Homeowners" videotape violated various subsections of § 1692e of the FDCPA. Section 1692e prohibits debt collectors from using "false, deceptive, or misleading" representations or means in connection with the collection of any debt. Fairbanks contends that Count II must be dismissed because the videotape did not demand that plaintiff make any payment and thus was not a communication in connection with the collection of a debt.

Fairbanks relies on <u>Bailey v. Security National Servicing Corp.</u>, 154 F.3d 384, 387 (7th Cir. 1998), for the proposition that we should focus on whether the communication demands payment of a debt. In <u>Bailey</u>, the Seventh Circuit held that a letter informing the plaintiffs about the current status of an account and future due dates of payment, but not demanding any payment, was not a communication in connection with the collection of any debt. The court noted that the letter did not "'demand' any payment whatsoever, but merely inform[ed] [plaintiffs] about 'the current status' of their account," that the due dates listed in the letter were all prospective, and that the letter did not "even imply that

anything owed under [plaintiffs'] forbearance agreement [was] overdue." 154 F.3d at 388-89.

Here, the videotape that Fairbanks sent to plaintiff does not demand any payment whatsoever; it does not even inform plaintiff of the status of her account or future due dates. It does not provide any information at all about plaintiff's particular loan status. The videotape simply encourages borrowers to contact Fairbanks' Loan Servicing Center and suggests possible loan workout options. Because the videotape does not demand payment from plaintiff, it cannot be construed as a communication in connection with the collection of debt.[3]

Plaintiff attempts to distinguish Bailey by suggesting that the case only involved certain subsections of § 1692e that are not applicable here. However, it is clear from both Bailey and the plain language of § 1692e that the requirement that a communication be in connection with the collection of a debt applies to every subsection of § 1692e. Plaintiff also contends that the videotape, because it followed Fairbanks' initial demand letter, was part of a "single, integrated course of collection conduct." (Response at 5.) Pursuant to Bailey, though, we must focus on the nature of the

---

[3] In determining whether the videotape demands payment and thus falls under § 1692e, we are relying on Exhibit F to the Third Amended Complaint, which is a transcript of the videotape. Defendant has moved to strike Exhibit F on the basis that the transcript is biased in favor of plaintiff. Even if the transcript is biased (which we need not address), plaintiff fails to state an FDCPA claim based on the tape. Because we are dismissing Count II, the only claim in the complaint that is based on the tape, defendant's motion to strike Exhibit F from the complaint is denied as moot.

communication itself, not on defendant's "course of conduct." Section 1692e does not regulate a debt collector's "course of conduct"; rather, it pertains to specific communications.

Plaintiff fails to state an FDCPA claim based on the videotape; thus, Count II must be dismissed.

**B.    Count III (Monthly Statements)**

Count III is a claim based on defendant's failure to include certain debt collector disclosures[4] required by § 1692e(11) of the FDCPA on the monthly loan statements it sent to plaintiff. Fairbanks asserts that Count III must be dismissed because, like the videotape in Count II, the monthly statements do not demand payment and thus were not communications in connection with the collection of a debt as required by § 1692e.

We disagree.  The monthly statements that Fairbanks sent to plaintiff, which are attached to the complaint as Exhibits G and H, clearly refer to "total late charges due" and therefore can be construed as communications in connection with the collection of a debt.  As stated supra, however, we reject plaintiff's argument that all of Fairbanks' communications constitute a single course of conduct and that, once Fairbanks demands payment, all of its subsequent communications are intended to effectuate that purpose.

---

[4]    The FDCPA requires that initial communications from debt collectors include a notice that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.  Subsequent communications must include a notice that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

We also note that Count III is the type of FDCPA claim about which the Seventh Circuit has observed: "The law would be best served by challenging clear violations [of the FDCPA] rather than scanning for technical missteps that bring minimal relief to the individual debtor but a possible windfall for the attorney." Bailey, 154 F.3d at 388.

C.  **Counts IV & V (Late Charges)**

The third amended complaint alleges that, in order to reinstate plaintiff's loan, Fairbanks required that plaintiff pay late charges with respect to months during which her loan was accelerated. Count IV alleges that Fairbanks violated §§ 1692e, 1692f and 1692f(1) of the FDCPA by assessing these late charges after plaintiff's loan was accelerated.[5] Count V seeks a declaration that Fairbanks is not entitled to collect post-acceleration late charges under the terms of the note or mortgage. Fairbanks argues that these claims must be dismissed because the express terms of plaintiff's mortgage documents permit such late charges to be assessed in the context of a reinstatement.

We agree with Fairbanks that plaintiff fails to state an FDCPA claim or a claim for declaratory relief based on late charges. Plaintiff's mortgage expressly conditions reinstatement on the

---

[5] Section 1692f prohibits debt collectors from using "unfair or unconscionable" means to collect or attempt to collect any debt, and § 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Borrower's payment of "all sums which then would be due under this Security Instrument and the Note <u>as if no acceleration had occurred</u>" and the Borrower's curing of "any default of any other covenants or agreements."[6] (Third Amended Complaint, Ex. J, Mortgage, at 5 (emphasis added).) Because the assessment upon reinstatement of late charges for months during which plaintiff's loan was accelerated is expressly authorized by the mortgage, plaintiff fails to state an FDCPA claim or a claim for declaratory relief, and Counts IV and V must be dismissed.

### D. Counts VI, VII & VIII (Property Preservation and Broker Price Opinion Charges)

Count VI alleges that Fairbanks violated §§ 1692e, 1692f and 1692f(1) of the FDCPA by assessing amounts for "broker price opinions" and "property preservation services" performed by an entity called "RR Review." Count VII seeks a declaration that Fairbanks is not entitled to collect these charges under the terms of the note or mortgage. Fairbanks contends that Counts VI and VII must be dismissed because the express terms of plaintiff's mortgage documents permit Fairbanks to charge plaintiff for these services in the context of a reinstatement.

Plaintiff concedes that the mortgage documents permit Fairbanks to charge plaintiff for certain amounts:

---

[6] Plaintiff argues that late charges can only be assessed with respect to monthly payments, which cease to become due when a loan is accelerated. This reasoning, however, fails to account for the phrase "as if no acceleration had occurred."

> **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, or condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. . . .
> Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.

(Third Amended Complaint, Ex. J, Mortgage, ¶ 7.) Plaintiff contends, though, that the charges for RR Review's services violated the FDCPA and the terms of the mortgage for two reasons: (1) the broker price opinions were not "necessary to protect the value of the Property"; and (2) Fairbanks did not "disburse" amounts for RR Review's services because RR Review is simply a part of Fairbanks staffed by its own employees.

Fairbanks argues that broker price opinions are necessary to protect the value of the property. This contention goes to the merits of plaintiff's case, which is not at issue on a motion to dismiss. We believe that plaintiff adequately states claims in Counts VI and VIII on the theory that broker price opinion charges are not permitted because they do not protect the value of the property.

However, we reject plaintiff's claims to the extent that she is alleging that any services performed by RR Review violated the

FDCPA and the terms of her mortgage documents simply because they were performed by RR Review. Plaintiff hangs her hat on the word "disbursed" in paragraph 7 of the mortgage; according to plaintiff, amounts can only be "disbursed" to third parties, and RR Review is not a third party because it is affiliated with Fairbanks. We believe that this is a strained and unreasonable interpretation of the word "disbursed" that is considerably narrower than even the dictionary definition of the word quoted in plaintiff's brief. The word is not restricted to amounts paid to non-affiliated third parties only,[7] and the context in which the word is used also does not imply this restriction on the defendant's right to charge a defaulting borrower for actions taken to protect the value of the property.

By the same token, plaintiff fails to state a claim in Count VIII for a violation of either the Illinois or Pennsylvania consumer fraud acts based upon the charges for RR Review's services. It would be one thing if plaintiff were claiming that RR Review never performed the services for which plaintiff was charged. But just because Fairbanks and RR Review are affiliated does not render the charges for RR Review's services "fraudulent." Therefore, Count VIII will be dismissed.

---

[7] "Disburse" simply means to "expend" or "spend." Webster's Third New International Dictionary 644 (1971).

E.  **Count IX ("Recoverable Corporate Advances")**

Count IX is a claim that defendant violated § 1692e of the FDCPA by listing attorney's fees under the category of "recoverable corporate advances" but not under the category of "legal fees" on a document dated December 28, 2001. Pursuant to plaintiff's request, the document provided her with loan reinstatement figures. Plaintiff claims that it is deceptive and misleading to characterize $2,164.54 of attorney's fees as "recoverable corporate advances" when the item for "legal fees" read "$0.00." (Third Amended Complaint, ¶ 33 & Ex. K.)

Defendant does not argue that the amounts listed as "recoverable corporate advances" represented anything other than attorney's fees. However, defendant contends that Count IX must be dismissed because it was not misleading to characterize the fees as "recoverable corporate advances" for two reasons. One, defendant had in fact "advanced" these amounts to foreclosure counsel. Two, the category "legal fees" identifies only "those legal costs that have not yet been paid and remain outstanding." (Reply at 14-15.) We reject defendant's argument, which really appears to be directed at the merits of plaintiff's claim. Defendant's interpretation of the phrase "legal fees" is not evident on the face of the document that was provided to plaintiff. At this point, we are only concerned with whether Count IX states a claim, and it does. Accordingly, the motion to dismiss is denied as to Count IX.

## F. <u>Counts X & XI (Attorney's Fees)</u>

Count XI of the third amended complaint alleges that Fairbanks violated the FDCPA by "adding attorney's fees, legal fees, and related expenses" "to the borrower's account even though the sums have not been awarded, approved or authorized by any court." (Third Amended Complaint, ¶ 127.) Count X seeks restitution for, or cancellation of, those fees. Fairbanks contends that Counts X and XI do not state claims because the legal fees were authorized by the note and mortgage, and Illinois law does not prohibit a party from contractually assessing attorney's fees without a court award.

The note and mortgage in this case clearly authorize the assessment of reasonable attorney's fees incurred in relation to enforcing the mortgage documents. The note states, "If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." (Third Amended Complaint, Ex. I, Note, ¶ 6(E).) The Mortgage provides that in the event of a default by the Borrower, the Lender may pay for whatever is necessary to protect the value of the property and Lender's rights in the property, including appearing in court and paying reasonable attorney's fees, and that these payments shall become

additional debt of the Borrower. (Id., Ex. J, Mortgage, ¶ 7.) In the section titled "Acceleration; Remedies," the mortgage also states: "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence." (Id., Ex. J, ¶ 21.)

Plaintiff does not dispute that the mortgage documents authorize reasonable attorney's fees, and she does not allege that the amount of fees were unreasonable. Rather, plaintiff's position is that the assessment of attorney's fees <u>without court approval</u> violates Illinois law and the FDCPA. However, plaintiff does not cite any authority that supports her argument. The Illinois cases cited by plaintiff merely stand for the principle that a party seeking to recover attorney's fees that are challenged as unreasonable bears the burden of demonstrating reasonableness. They do not stand for the proposition that Illinois law prohibits the imposition of attorney's fees, pursuant to a contract, without a court order. See <u>James v. Olympus Servicing, L.P.</u>, No. 02 C 2016, 2002 WL 31307540, at *3-4 (N.D. Ill. Oct. 9, 2002) (Grady, J.) (holding same).

Since the briefing on this motion was completed, plaintiff has brought three motions to cite additional authority in support of her argument. We have granted two of those motions, and plaintiff's second motion to cite additional authority is still

pending. That motion is granted. However, none of the cases relied upon by plaintiff as "additional authority" bears upon the issue in this case. In Shula v. Lawent, No. 01 C 4883, 2002 WL 31870157 (N.D. Ill. Dec. 23, 2002), the plaintiff had received a letter from defendant, a debt collector, demanding the payment of court costs related to the collection of a debt for medical treatment. Plaintiff moved for summary judgment on his claim that the letter violated the FDCPA because the court costs were not expressly authorized by agreement, nor were they permitted by law. Defendants admitted that plaintiff had not entered into any agreement requiring him to pay court costs and that no judgment existed against plaintiff awarding court costs to defendant, but they argued that an Illinois statute permitted the collection of court costs.

The court in Shula noted that the Illinois statute provided for the _possibility_ of court costs by stating that they were "recoverable," but the statute did not make it automatic every time the statutory requirements were met. The parties still had to request a court order imposing such costs. Therefore, the court concluded that the court costs demanded by defendant were not "permitted" by law under the FDCPA, and granted summary judgment for plaintiff on that claim. Shula, 2002 WL 31870157, at *10.

The instant case is easily distinguishable from Shula. There was no "agreement creating [a] debt" at issue in Shula; rather, the

court was dealing with the "permitted by law" prong of § 1692f(1). Here, we have the note and mortgage. The only question, then, is whether the note and mortgage "expressly authorize" reasonable attorney's fees. They do; therefore, plaintiff cannot assert an FDCPA claim for attorney's fees, or seek restitution.

Plaintiff asserts that the Seventh Circuit's ruling in Veach v. Sheeks, 316 F.3d 690 (7th Cir. 2003), controls this case. Plaintiff also relies on Bernstein v. Howe, IP 02-192-C-K/H, 2003 WL 1702254 (S.D. Ind. Mar. 31, 2003). Both cases are distinguishable because they do not address whether Illinois law or the FDCPA prohibits the assessment, without a court order, of attorney's fees that have actually been incurred, when they are expressly authorized by contract.

Plaintiff's claims in Counts X and XI for restitution and for violation of the FDCPA must be dismissed.

*Plaintiff's Motion to Strike Defendant's Reply Brief or for Leave to Respond to New Matter*

Plaintiff moves to strike defendant's reply brief (to plaintiff's response to the motion to dismiss) or, alternatively, for leave to respond to new matter, asserting that Fairbanks included new matter in its reply brief and attached "unauthenticated and improper" documents. We believe that plaintiff's motion is in reality an improper surreply brief and constitutes plaintiff's attempt to have the last word. There is no reason to strike defendant's reply brief because it fairly

addresses matters raised in plaintiff's response and does not raise "new matter." Accordingly, plaintiff's motion to strike the reply brief or for leave to respond to new matter is denied.

*Defendant's Motion to Strike Exhibits*
*D and F from the Third Amended Complaint*

Defendant moves to strike two exhibits from the Third Amended Complaint. Exhibit D is fifty pages and consists of various complaints internet users have posted on internet sites regarding the practices of mortgage servicers, including Fairbanks. The complaint describes Exhibit D as "material on two Internet sites complaining about inaccurate servicing practices by Fairbanks." (Third Amended Complaint, ¶ 16.) Defendant argues that this material is irrelevant and constitutes hearsay.

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike and provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." We agree with defendant that Exhibit D is immaterial matter. A great portion of the material does not even concern Fairbanks's servicing practices, but the practices of other companies. As for the material that does refer to Fairbanks, it has no indicia of reliability (the sources of many of the complaints about Fairbanks are not even identified) and is irrelevant to the facts alleged in the complaint. The material appears to have been attached to the

complaint solely for the purpose of prejudicing defendant. Exhibit D therefore will be stricken from the complaint.

Defendant also moves to strike Exhibit F from the complaint. Exhibit F is a transcript of the videotape discussed *supra*. Because we are dismissing Count II, which is the only claim to which the videotape is relevant, the motion to strike is denied as moot as to Exhibit F.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint is granted in part and denied in part. Counts II, IV, V, VIII, X, and XI of the Third Amended Complaint are dismissed with prejudice. The motion is denied as to Counts III, VI, VII, and IX.

Plaintiff's motion to strike defendant's reply brief or for leave to respond to new matter is denied.

Defendant's motion to strike Exhibits D and F from the Third Amended Complaint is granted in part and denied in part. Exhibit D is stricken from the Third Amended Complaint. The motion is denied as moot as to Exhibit F.

The claims that remain are Counts I, III, VI, VII, and IX of the Third Amended Complaint.

This case is set for a status hearing on May 28, 2003, at 10:30 a.m., to discuss plaintiff's renewed motion for class certification, which is pending but has not been briefed.

DATE:     May 20, 2003

ENTER:    _____
          John F. Grady, United States District Judge